minor, people of the state of Illinois, versus M.A., are you ready to proceed? Defense Reader. Ms. Boland. Good morning. Assistant State's Attorney Mary Boland on behalf of the people from the Cook County State's Attorney's Office. Good Council, Madam Chief Justice, may it please the members of the court. Today we're here to analyze the constitutionality of the Child Murderer and Violence Against Youth Registration Act, what the parties have termed as VOIRA. VOIRA in all respects is a constitutional exercise of the state's police power. The challenges here are substantive due process, procedural due process, and equal protection. But there's no question that juvenile violent offenders have a high recidivism rate, and that VOIRA serves to protect the public, just like SORA does, and increased law enforcement monitoring is one of the parts of that scheme. But after a registrant turns 17, also there's increased public awareness. So the balancing of the protection of the public with disclosing registry information is exclusively a legislative function. VOIRA is a civil regulation, just like SORA is. It's not a sentencing statute as the appellate majority characterized it. Respondent also seeks to import these Eighth Amendment proportionality principles that are applicable to juvenile life sentences and death sentences in the Roper, Graham, and Miller line of cases, claiming that she has transitory qualities, she's amenable to transfer statute, and it's also considered and rejected that argument before in J.W. in 2003 and also in Konetsky in 2009, both cases that dealt with SORA, a very similar registration act that applies to sex offenders. So there is no reason for this Court to abandon its analysis last year in Patterson that rejected these claims and Respondent hasn't offered you any to do so. VOIRA serves an independent purpose from the Juvenile Court Act. It defines as violent a very narrow number of offenses, those offenses in all cases except for murder applied to children under the age of 18. Respondent herself concedes that cases like murder and kidnapping pose public threats. She also concedes that her own aggravated domestic battery with a knife which caused great bodily harm in the nature of 13 stitches to her husband, was a direct result of domestic violence. And given these concessions, she's clearly limited to making an as-applied claim. And as applied to Respondent, she claims her case was just involving a family squabble or no threat to the public. Obviously we've long since moved beyond the notion that domestic violence is a private problem. It's certainly a public threat. And if you look at this record, there's, you know, throughout the brief Respondent kind of goes through her perception of her experiences. There's no question that she's been angry and confrontational with classmates, teachers, other people on the street. And the victim himself had reported that she'd pulled a knife on him before. So her crime clearly falls within the sphere of violent offenses. The claim made here is that somehow juveniles should be exempted. But designating offenses categorically for triggering of the registration law is perfectly constitutional. The U.S. Supreme Court has said so. This Court has said so. And there's absolutely no reason that it wouldn't say so in the VOIRA Act. Respondent says, however, that she is entitled to a dangerousness hearing. But dangerousness hearing, the procedural due process to be claimed, has to be relevant to the law at issue. Individual dangerousness is not a trigger for VOIRA. What is a trigger for VOIRA is an adjudication, in this case of delinquency, of a particular designated offense. So the legislature doesn't have to add in a judicial role. It doesn't have to mandate additional process, as it doesn't for SORA. It, however, does treat juveniles under 17 more protectively. It limits dissemination, as SORA does, to counselors, school officials, those people who either need to know or have some connection to the juvenile. Respondent complains about that in her brief, but she doesn't raise any constitutional issues. And then it is fair that the balance shifts when the minor becomes older, can move about more freely in the community, and can present more of a danger to the public. So that claim of procedural due process ought to fail at the threshold. But secondly, it's respondent's burden to establish that she has a liberty interest. She explicitly does not claim a privacy interest. But what she does do is claim a reputational interest. She cites back to the statement has to be either a false statement or a derogatory statement. It has to have some tangible and material state imposed burden or alteration of status. So the idea that reputation is covered alone as a matter of procedural due process is incorrect. Respondent has, like Paul versus Davis, had to do with that act of shoplifters flyer. And the court said no additional process is allowed as an adult, a right to buy liquor until the police chief decided you were dangerous. Here no one has a right to commit aggravated domestic battery. So any kind of change of status or reputational effect, that has to do with her own unlawful conduct. Employment and education. Again, some very general statements that these will be impacted. But FOIA doesn't impose any kind of state impairment. It doesn't directly bar education. It doesn't bar employment. And you don't have any right to be employed at a particular job. The last claim that she makes is that she has a right to avoid criminal penalties. But registration is not a criminal penalty. It's only if we arrest you for a violation, we charge you for that violation, we prove additional elements, that you're at risk of a criminal penalty. So you don't have a liberty interest in the fact that you have to register. But even if you give some weight, even if you give some weight to that first factor in Matthews for procedural due process, even if you say there's some impact to the reputation, the court's already found that the procedures that exist in the prior adjudication itself comply with due process. What are those procedures? The right to notice, the right to counsel, the right to confront witnesses, the right against privilege against self-incrimination, and proof beyond a reasonable doubt. These are exactly the same things that were at issue in Matthews to be automatically registered in SORA. And the court found no additional process was required. So even if you give some impact, the second and third Matthews factors are weighed in heavily for the state. Now it's true, respondent says, but SORA was amended to give minors a chance to get off the registry after five years for a felony or two years for a misdemeanor, and they don't have to register as adults at 17. So why is that? Why is there a judicial review process there? Well, partly it comes from J.W., from Justice McMorrow's concurrence in J.W., where this court upheld a substantive due process challenge to a version of SORA that was very much like the version of VOIRA in effect here before this court. In other words, that version of SORA had no judicial review process, and it did require the minors to register as adults at 17. Although this court upheld it, the court in that case, if you recall, J.W. was 12 years old, and he was designated a sexual predator in that case, and therefore he had to register for life. And so Justice McMorrow in her concurrence said maybe the legislature should consider the wisdom of doing this type of scheme. And the legislature looked at that. And one of the reasons the legislature looked at that is because if you look at our major sex offenses in Illinois, of which there are five, all of those sex offenses can ensnare juveniles. They can ensnare consensual conduct between teens. They can ensnare age gap. They can ensnare age-inappropriate contact, which is what happened in J.W. His victims were younger 7- and 8-year-olds. So what happens though is we don't have a designated offense that we can name. Aggravated criminal sexual assault applies from the most violent cases to age-inappropriate conduct. Criminal sexual assault, the same. Aggravated criminal sexual abuse, the Class 2 offense, the same. So what the legislature said was we need an individual process so that you can show that you're engaging in essentially non-threatening conduct to the public. And so it added very specific factors tailored to SORA, the Sex Offender Registration Act, to make sure that you're engaging in non-threatening conduct that allows that minor to show. And a risk assessment and some of the sex offender history, a number of factors that the legislature says need to be looked at before that person can get an early off. Mr. Poland, should there be a call to the legislature in this case? Is there the same need to request that the legislature take a look at it with respect to VORRA? You know, obviously the court has the power to ask the legislature to think about its wisdom in doing certain policy decisions. But I would say that unlike SORA, which is a very broad statute and it ensnares both, remember, sex crimes and sexually motivated non-sex crimes. It's a very broad statute. SORA is a very narrow statute. I think there are only about 19 crimes. And of those crimes, all of them by virtue of the statute are dangerous to children. Either outright harm, risk of death, or right on the cusp, putting a child in a place where they're at risk. So should the legislature enact such a provision? I think there's a rationale for them to have the scheme that they have. And I don't know that they need to look at it because it's not nearly as broad of a statute. So I don't think it's necessary to hold a dangerous hearing. It's  The other is the governmental interest. We have two at stake. We have a compelling interest in the safety of children in Illinois. No question about that. But there are also going to be incredible fiscal and administrative costs, and we have to consider those as well. When you look at SORA's early termination hearings, the Juvenile Justice Commission report looked at the numbers of juvenile arrests over a six-year period and found that less than 1% of juveniles are arrested for sex crimes. So you think about the continuum of those sex crimes. The most minor sex crimes may not result in a petition being filed, may be diverted for community services, may result in a continuance on supervision, and never trigger a VOIRA. The most serious sex crimes for 15- and 16-year-olds, those are going to be swept into the adult registry within three days, and there's no early out on the registry for that person because they're going to be treated as an adult from the start. So what you get is the fraction of the 1% or whatever percent is left that might be even eligible for these hearings. So yes, the hearings go on. Yes, there are fiscal costs. Very few people are going to even be eligible for those hearings. You look at the violent offenses, however, all the ag batteries, all the firearms, the cases that would be triggering VOIRA, I think that's going to be a significant number. I think I cited the 213 annual report of the Illinois courts that noted that 26% of juvenile probationers have committed a violent offense. So if you figure in 2012 there were just under 30,000 juvenile arrests, we're talking about thousands. If all 26% qualified, that would be about 7,500. So some number around there. But the idea is every one of those people would be able to proceed. And in many cases, they can't prove they pose no risk of harm because inherent in their offense is the risk of harm that they've already committed. Also, the legislature has developed all these risk factors elements in determining whether the early removal process is successful. Some of those factors don't transfer over very easily because they're specifically identified to sex offenders. So we'd end up having to probably a pool of experts who could even provide these risk assessments. So it would be an unreasonable increase in the state's fiscal and administrative burdens, which weigh heavily against these additional proceedings. On the equal protection question, juveniles are not similarly situated just because they're juveniles and just because they have to register. I mean, for a number of reasons, and the court just heard a case in which juveniles are treated differently depending on whether there's mandatory transfer or no mandatory transfer. We already treat juveniles based on the distinct class that the legislature determines that it needs to tailor the laws to address. So in 2006, the legislature split from SORA the VOIRA registry and said that only sexually motivated cases as well as sex crimes are going to stay in SORA. VOIRA is going to have these limited number of violent crimes. Why? Because it wanted to have a system of enforcement that would have different consequences for those two classes of individuals. The conduct that brings somebody to VOIRA is very different than that brings somebody to SORA. And respondent claims that if she had violently raped her brother, she would be able to petition off the registry and she could not have to register at 17. But a person who violently rapes is obviously going to be swept into the adult system. 13, 14, 15, and 16-year-olds may be the subject of a petition. But even if we keep them in juvenile court, juveniles who commit violent rapes, like JW, are going to be categorized as sexual predators. Even an aggravated criminal sexual abuse, the equivalent class 2 felony, is going to be designated as a sexual predator. Why? Because the legislature wants to tailor the consequences to the fears and the risks about child sexual predators. What does that mean? Well, if you're a sexual predator, you're registering for life, not just 10 years, as in VOIRA. If you're a sexual predator, you give your DNA, you give your DNA, you give your DNA, you provide social media, you give us your vehicle registration, you have to give up your online identity because we don't want people luring children through false identities. None of that applies to VOIRA. You don't have to do any of that. And the consequences don't stop there. If you're a sexual predator, we regulate where you can be present, in parks and playgrounds. We don't want you hanging around where children congregate. And we regulate where you can live and where you can work. None of those things apply to VOIRA. We want to make sure that the legislature understands that these registries are separate and that these classes are not the same. So the equal protection challenge should fail at that level. But as I've said, the differing treatment is rational because it goes to the scheme. We can't just designate the offense of ag crime sex abuse and then say that person is excluded from the registry the way we could with domestic battery. Because ag crime sex abuse can apply to adults, can apply to kids, can apply to age groups. So there's a rationale for the differing treatment that the legislature has provided for these two different registries. And it is clear that VOIRA comports with equal protection as a result. A couple final points. VOIRA was created to reduce future risk to children. And so its line drawing just has to be rational. It doesn't have to be perfect. And I would say that respondents' criticisms should be moved to the legislature instead of this judicial forum. The people asked this court to reverse the appellate court in this manner. Thank you. Good morning, Your Honors, and may it please the court. I'm Assistant Appellate Defender Rachel Moran, and I represent MA. MA was 13 years old when her abusive older brother attacked her in a dispute over a missing shower cap. After he climbed on top of her, beat her with his fist, tore out her hair, and swore at her, she responded by grabbing a knife from the kitchen and cutting him twice. For that act, she was found delinquent of aggravated domestic battery and automatically required to register as a violent offender for a minimum of ten years in every county she lives, works, or attends school, and has a criminal record. She was released from jail with no opportunity to request termination and no chance, no hearing to determine whether she's actually a threat to the public. When she turns 17, her information will be placed on an adult public website and will be automatically disseminated to every school official, librarian, daycare facility, and law enforcement official in every county she lives, works, or attends school. They, in turn, can disseminate that information to anyone they want to please in their discretion, including broadcasting it via television or the internet. The appellate court correctly found this statutory scheme unconstitutional for two reasons. First, it violates procedural due process because it automatically labels children and requires them to register as violent offenders without any hearing at any point to provide equal protection. Because it treats children convicted of violent non-sex crimes, it denies them the protections given to children convicted of violent sex crimes. This court should affirm the judgment of the appellate court, finding two sections, sections 154-5A2 and 154-10 unconstitutional, both facially and as applied to 13-year-old children under the age of 18. I'd like to begin with something my opponent said at the very beginning of her talk. She said VOIRA operates, quote, just like SORA does. Well, it doesn't. There are a number of protections in SORA that are not available to children on VOIRA. And that is the heart of both the procedural due process and the equal protection claims. We agree with the three-step statutory framework in a procedural due process claim. We disagree that this is anything like this court's decision in Kanetsky or in Jonathan C. B., in which this court upheld the constitutionality of SORA, and specifically when addressing procedural due process claims. In both of those cases decided in 2009 and 2011, this court specifically said that there was no valid procedural due process challenge because SORA had been amended to make it less burdensome to children. SORA was amended in 2007 to protect children convicted of even violent sex crimes by not requiring them to ever register as adults, not making their information publicly available, and affording them an opportunity to petition for termination. So we have no dispute with Kanetsky. We have no dispute with Jonathan C. B., but this is a very different statute, and it's one this court has never addressed, and it's significantly more onerous than SORA. As far as turning to the... Counsel, has the legislature removed the individualized risk of harm consideration from the act? No, it hasn't, Your Honor. In fact, the state claims, although it didn't reference Connecticut versus Doe, it seems to be using a Connecticut versus Doe analysis, which is the United States Supreme Court addressing the question of whether someone can automatically be labeled because of the fact of their conviction or their adjudication and nothing further. And I believe that perhaps that's what Your Honor is referencing. In Connecticut, the United States Supreme Court said that plaintiffs who assert a right to a procedural due process hearing must show that the facts they seek to establish in that hearing are relevant to the statutory scheme. And here the state has repeatedly said in its brief that the purpose of VOIRA is to protect the public from violent offenders. I think the state's position is that the legislature has already deemed by the categorization of the qualifying offenses as violent that the offenses do pose a risk of harm. Well, there's a couple problems with that. Even if we assume that's what the legislature has done, first I'd like to correct, the state said that VOIRA is a very narrow statute with a limited class of offenses. There are 36 offenses that can subject one to requirement on VOIRA, and they are as minor as misdemeanors. That's a misstatement the state said repeatedly in its brief, that it is limited to violent felonies. That's not a restraint. That would subject a child to a minimum of 10 years of registration, and that doesn't involve any element of violence at all. But secondly, even if the legislature has assumed that those children would present a threat to the public, that assumption is no longer valid by the time the child turns 17 and is subjected to these additional onerous requirements that are not at issue in SORA. And that's what the appellate court said when it said no child would be subject to these additional onerous requirements. No reasonable judge would ever rely on a 4-year-old clinical evaluation of a psychiatrist saying that MA had, yes, she has temper issues. She's a 13-year-old who's been subjected to years of abuse by her family. The state mentioned that she had pulled a knife on her brother. Well, her brother hit her with a shovel, with a baseball bat. He used knives on her as well. He tore her hair out. The record is replete with instances of violence. Her mother punched her in the face, and her brother her older 19-year-old brother also routinely abused her. So the idea that we can say just because she reacted in this way when she was 13, she's still a threat when she's 17. That's what the appellate court said. That's a real problem, because we wouldn't in no other circumstance would the court say it's acceptable to rely on a 4-year-old clinical evaluation to say that she's still a threat when she reaches this very important threshold age and is now an offender, and her information is now so broadly disseminated. As to the issue of whether there are privacy interests at stake, the answer is yes. I think the correct test is whether there's a threat to her reputation and whether there's anything else involved. The state referenced it as the stigma plus test. We don't disagree with that at all. Here, it would be reputation plus education prospects, diminished education prospects, diminished employment. Those are two of the most relevant. And Emma is not required to prove that she's actually lost a job at age 13. She wouldn't even be applying for jobs. But in Cabaretta v. Department of Child and Family Services, the appellate court said that the loss of prospective employment is sufficient to create a liberty interest. And in that case, it addressed a teacher who may have trouble obtaining future employment. And of course she'll have trouble obtaining employment when every employer can be notified that she's a violent offender as soon as she turns 17. The Illinois Juvenile Justice Commission, which released its report this past December discussing the harmful effects of registration on children subjected to SORA, those kids, of course, they're protected from public dissemination in many ways. And yet the Juvenile Justice Commission still found overwhelming statistics indicating that those children are subjected to loss of employment opportunity, as well as loss of schooling opportunity, and that the registration is actually counterproductive for many of those reasons. So the private interest issue is both reputational damage and the loss of employment and educational opportunity. As far as the second and third factors in a procedural due process test, the state said that this would be a huge financial burden on the government and that I think the state cited as many as 7,000 children who apparently could be applying for termination. I'm not even able to ascertain how many children are on VOIRA, so I can't specifically contradict that. That seems like a... I think the state was referencing statistics that deal with arrests and not convictions, but I can't say specifically how many children. But we know this is in the context of SORA. SORA is a broad statute as well, but as I mentioned, VOIRA includes 36 offenses and any substantially similar offense. So both of them, the legislature was perfectly willing and able, and there have not apparently been financial burdens on the state for holding these hearings in the context of sex offenders. And it shouldn't be difficult, especially for children who are already subjected to probation. The juvenile court judge is already holding occasional hearings to determine their probationary status, and he can hold another hearing to determine whether the child should be subjected to VOIRA. The judge in this case specifically said, when he sentenced M.A. and when he told her, you have to register as a violent offender, this is not my order, this is an automatic requirement. He said, they allow sex offenders to petition for termination, you'd think they'd do it with these kids too. He would have, that's a kind of a hearing, and he doesn't know why it's not available. As for the equal protection issue, which is based on the protections afforded to children convicted of sex offenses that are not afforded to children convicted of violent offenses, the state's argument essentially is that SORA, the legislature enacted these provisions, these protections in order to protect children from non-violent offenses. But the reality is, and I will quote the state here, they say that juveniles are not, SORA and VOIRA registrants are not similarly situated because, quote, a violent juvenile is not in the same class as a non-violent juvenile. The problem with that argument is that kids on SORA can be violent juveniles too. And the violent sex offender, as long as he or she is prosecuted in juvenile court, gets the same protections. The state mentioned that some children would be classified as sexual predators. That doesn't matter for purposes of the SORA amendments. Those children can still petition for termination. The children in Konetsky and in Jonathan C.B. were allowed to petition for termination. This court relied on that fact when it upheld the procedural due process claim. And they, no matter how violent their offense, if they're prosecuted in juvenile court, they can still petition for termination. Violent offenders on VOIRA cannot do so. And to clear up the legislative history, it's not appropriate to assume that there was even an intentional, let alone a rational distinction between the two offenses. When VOIRA was proposed in early 2006 and enacted in June of 2006, when the legislator proposed VOIRA, he said that the children on VOIRA would be subject to the same requirements and restrictions as SORA. He didn't say we're intentionally treating children on SORA differently. He said the purpose of VOIRA was that SORA had gotten so broad that many people convicted of offenses that had nothing to do, that were not sexually motivated, were being placed on SORA. So VOIRA was proposed, and I'm quoting the legislature, to clean up the sex offender registry and to simply shift them over, the registrants, to VOIRA. VOIRA was modeled on SORA and the people were intended to be subjected to the exact same restrictions. Fifteen months later, SORA was amended. So the state's contention that this was, that the legislature has intentionally distinguished between the two and thoughtfully proposed amendments to SORA that are absent from VOIRA, that's not how it worked. VOIRA was passed with no discussion, no debate. No dissent even, no questions. It was passed because people thought it was exactly like SORA. Well, it turns out it's not, and it's not in a very troubling way. And as to the contention that this is just a matter for the legislature and nothing else, certainly I would certainly agree that rational basis review is not, it's a low standard and it's not something the court routinely overturns, but this court has done so in the past and it should do so in the future. And it should do so here. In In Re DW, for example, in 2005, this court found, and I quote, no rational basis to distinguish between parents whose rights are terminated under the Adoption Act because they've been convicted of certain offenses versus parents whose rights are terminated under the Juvenile Court Act. Essentially what was going on there is that parents who had been convicted of certain offenses automatically had their parental rights terminated and parents who had been convicted of other offenses had a chance to rebut the presumption that they were unfit and they were provided counsel, they were provided a hearing. And this court said that's irrational to distinguish simply based on the type of offense or the specific act they're being prosecuted under and that an irrebuttable presumption of unfitness was inappropriate. And that's similar in some ways to this case because essentially the state is saying there's an irrebuttable presumption that lasts at least 10 years that someone is a threat to the public, but that same presumption doesn't exist for children convicted of violent crimes that involve an element of sexual violence versus non-sexual violence. Your Honors, Illinois has gone from, in this situation, Illinois has gone from being a leader in juvenile justice reform to being the only state in the country that treats violent offenders more onerously for purposes of registry than sex offenders, even violent sex offenders. So the idea that this was rational, no other state has enacted anything like this. The state has not pointed to a single registry that specifically treats juvenile violent offenders, denies them the protections that are afforded to juvenile sex offenders. And as far as MA goes, this court should not wait on the legislature. When this court expressed its concerns in In Re J W, it took the legislature four years to act. If this court does so again here and settles with simply expressing its concerns about this registry, MA is exposed, she's 15 now, she was 13 when this happened, she's exposed to turning 17 before the legislature acts, to having her information disseminated, to the possible denial of employment opportunity, to the possible denial of educational opportunity, to the possible denial of employment opportunity when every institution of higher education in the county she applies to or lives will be notified that she's a violent offender. These are real threats to her. And even if this court does not choose to find the statute facially unconstitutional, it should do so as applied to this child who was attacked by her older brother and who has not been found guilty of any offenses that involve a threat to the public. The state claims that domestic abuse is a serious threat, and I would wholeheartedly agree that this is a serious threat to this child, but it has failed MA every step of the way. It failed her when it failed to protect her from the childhood, the older brothers that were beating her, and it would fail her now if this court refuses to strike down VOIRA as applied to her. Thank you. Thank you. Just very briefly, Your Honors. First of all, the respondent has never challenged the validity of the juvenile adjudication for aggravated battery and aggravated domestic battery. So while she wants to retry the case here, she has never challenged any of those issues in her brief. Secondly, the parents in DW were identical, and that is why the court made the ruling that it did. This individual is not identical to sex offenders, and this individual is not able to cherry pick the two things that she thinks are less onerous and say, I'm similarly situated, oh, but ignore all those more onerous lifetime registration requirements that exist for sex offenders. The legislature doesn't have to do abstract symmetry. What it can do is select a rational scheme, and that's exactly what it has done here. I'd point out the unlawful restraint. If you have a sexually motivated unlawful restraint, you are a sexual predator, and you will register for life. It is that serious in the view of the legislature. So the idea that we can denigrate some of these, oh, that's not this serious, and this is that serious, and do some sort of cross-comparative analysis is improper for the framework. My final point, Cavaretta. Cavaretta was a school teacher who was on the child abuse suspected registry from GCFS. Cavaretta stood to lose his profession without that process. So we're not in that place. We're talking about generalities. Cavaretta actually was a school teacher who faced losing his profession, and that is a liberty interest, and that's what distinguishes that case. So we're asking that this court reverse the appellate court and uphold the constitutionality of the statute. Thank you. Thank you. Case number 118049, Henry M.A., a minor, will be taken under advisement as agenda number 3. And Ms. Boland and Ms. Moran, thank you for your arguments today. You're excused at this time.